## Case No. 16,079.

### UNITED STATES v. POWELL.

[65 N. C. 709.]

Circuit Court, D. North Carolina. June Term, 1871.

OFFICE AND OFFICER — DISQUALIFICATION BY ENGAGING IN REBELLION—CONSTITUTIONAL LAW.

[1. One who, as constable of a county in North Carolina, took an oath to support the constitution of the United States. and afterwards engaged in the Rebellion, is disqualified by the fourteenth amendment. unless relieved in the manner provided. to hold any office. state or national, and is therefor indictable under section

15 of the act of May 31, 1870 (16 Stat. 140), for subsequently accepting the office of sheriff.]

[2. The expression "engaged" in insurrection, as used in the amendment, implies a voluntary effort to assist the insurrection, and acts done under compulsion of force, or of a well-grounded fear of bodily harm, do not come within the operation of the provision.]

[3. Accepting and holding the office of justice of the peace under the Confederate government was not, of itself, sufficient evidence of engaging in the insurrection.]

[Indictment of Amos S. C. Powell for accepting the office of sheriff when disqualified from holding office by the 14th amendment to the constitution of the United States.]

This was an indictment under the 15th section of the act of congress of the 31st May, 1870, entitled "An act to enforce the rights of citizens of the United States to vote in the several states of this Union and for other purposes." [2] The indictment charged that the defendant knowingly accepted and held office under the state of North Carolina, to which he was ineligible under the provisions of the 3d section of the 14th amendment of the constitution of the United States. A witness, in behalf of the prosecution, testified that the defendant, prior to the commencement of the late Rebellion, held and exercised the duties of the office of constable, in Sampson county, to which office it was shown, by the records of the court of Sampson county, the defendant had been first appointed by the county court, upon a failure to elect by the people, and subsequently was elected by the people as the law provided; and in both instances qualified by taking the oaths required by law. Another witness, in behalf of the government, testified that in 1863 he (the witness) was a captain and was recruiting a company for the Confederate service, at Wilmington; that defendant came to him, and proposed to enlist in his company, provided he would accept a substitute, and relieve him from duty; that the defendant did enlist in the service, and tendered a substitute, as agreed upon, and, therefore, he granted to the defendant a certificate of exemption, as provided by a Confederate law. The prosecution further proved that the defendant applied for and received the appointment of justice of the peace for Sampson county in 1863, and qual fi.d as such; that he had been elected sheriff of Sampson county in the year 1868, and qualified, and continued to perform the duties of the sheriff up to the present time.

The defendant offered a witness to prove that after the passage of the conscript laws by the

Confederate government, and when the authorities had commenced to enforce the same, he was notified by the conscript officer, in his county, that he would be required to perform such service; that a day and place had been fixed for the meeting of conscripts, and he had been notified to attend; that he became alarmed, being averse to such service, volunteered to enable him to offer the substitute, and thereby obtain exemption for himself.

This evidence was objected to by the prosecution as irrelevant, but was admitted by the court.

The defendant offered further to prove by witnesses, who lived in the same county, and near him during the Rebellion, and with whom he frequently conversed during the time the conscript law was being enforced in this county, and about the time the substitute was furnished by him, that he was opposed to the Rebellion, and his opposition to serving in the army. This was also objected to by the prosecution, but was received by the court.

The counsel appearing for the government asked the court to instruct the jury that the office of constable before the war was such an office as rendered those who had held it. and thereafter engaged in the Rebellion, ineligible to any office now, by the provisions of the 3d section of the 14th amendment, unless relieved, as that amendment provides.

The counsel for the government further asked the court to instruct the jury that if the defendant had before the Rebellion so held the office of constable, and thereafter volunteered, though he offered a substitute, and did no actual military service himself, and though his purpose may have been to avoid the service, that he engaged in the rebel service within the meaning of the constitution; and further asked the court to instruct the jury that if the defendant (having been constable as aforesaid) accepted the office of justice of the peace under the rebel government of North Carolina, though he may have performed no duty as justice promotive of the Confederate cause, that the acceptance of the office, and taking the oath required of such office, was such aid or engaging in service of the enemies of the United States as disqualified him from holding the office of sheriff, without the relief required by law.

Dist. Atty. Starbuck and Bragg & Strong, for the United States.

Battle & Sons, for defendant.

Before BOND, Circuit Judge, and BROOKS, District Judge.

BOND, Circuit Judge (charging jury). The facts in this case have been plainly presented and thoroughly argued to you, and it remains only for the court to instruct you upon one or two strictly legal points, to enable you to find a true verdict. And in the first place, gentlemen, if you find from the evidence that before the late war the defendant held the

---

[2] "Section 15. And be it further enacted, that any person who shall hereafter knowingly accept or hold any office under the United States, or any state to which he is ineligible under the third section of the fourteenth article of amendment of the constitution of the United States, or who shall attempt to hold or exercise the duties of any such office, shall be deemed guilty of a misdemeanor against the United States, and, upon conviction thereof before the circuit or district court of the United States, shall be imprisoned not more than one year, or fined not exceeding one thousand dollars, or both, at the discretion of the court."

office of constable in the state of North Carolina, and took the oath to support the constitution of the United States required of such office, and subsequently engaged in the Rebellion, it is necessary for you to know whether or not he is within the meaning of the provisions of the act of congress, under which he is now indicted.

The words of the statute, gentlemen, are broad enough to embrace every officer in the state. There can be no office which is not either legislative, judicial, or executive; and there can be no question, it seems to the court, but that, unless it be possible to find some external reasons for giving this broad language a narrower meaning, it embraces every office in the state. But we can find no such reasons. The act, to be sure, is primitive, and it is argued that it was passed to punish those high in authority in the rebellious states at the time of the outbreak of the Rebellion, for their bad faith toward the government they had sworn to support, and was not intended to reach those who had minor offices. But while the act is primitive in its character, it was passed at a time when congress was endeavoring to restore order and government throughout the rebellious states; and it was thought that in this effort those who had been once trusted to support the power of the United States, and proved false to the trust reposed, ought not, as a class, to be entrusted with power again until congress saw fit to relieve them from disability.

The words of the act were made just exactly comprehensive enough to include such persons, and, in the opinion of the court, embrace the office of constable, which is an executive office, and in North Carolina, at the time defendant held it, was limited in its exercise and jurisdiction by county lines only.

If you find that the defendant did hold the office of constable before the war, and took the oath to support the constitution of the United States, you must, before you find him guilty under this indictment, find a further fact, and that is, that he engaged subsequently in insurrection and rebellion against the United States. To establish this the prosecution offers evidence to prove two facts, which, if you find to be true, the question arises, do these amount in law to engaging in rebellion or insurrection? The first is, that in February or March, 1863, he furnished a substitute for himself to the Confederate army. This fact, if proved without explanation, would, of itself, gentlemen, be sufficient to show the defendant was engaged in the Rebellion. But the defendant alleges, and offers evidence to show, that he did not do this voluntarily. That he was himself enrolled, and was about conscripted, and was overcome by force, which he could not resist, and the question is whether, if you find the facts alleged by the defendant to be true, these exceed or justify his conduct in law.

We are of opinion, gentlemen, that the word "engage" implies, and was intended to im-

ply, a voluntary effort to assist the Insurrection or Rebellion, and to bring it to a successful termination; and unless you find the defendant did that, with which he is charged, voluntarily, and not by compulsion, he is not guilty of the indictment. But it is not every appearance of force nor timid fear that will excuse such actual participation in the Rebellion or Insurrection. Defendant's conduct must have been prompted by a well grounded fear of great bodily harm and the result of force, which the defendant was neither able to escape nor resist. And further, the defendant's action must spring from his want of sympathy with the insurrectionary movement, and not from his repugnance to being in an army, merely.

When you have determined these facts, gentlemen, and have applied the law as we have stated it to these two points, you will have no further difficulty, for, although it is further alleged by the prosecution that the defendant held a commission of justice of the peace in 1865, under the Confederate government, we are of opinion that he might well have held that office without giving adherence or countenance to the Rebellion. It was absolutely necessary that during that commotion there should have been some to preserve order and to restrain the vicious and licentious, who, without this, would have taken advantage of the turmoil to pillage and destroy friend and foe alike. He was a mere peace officer, and unless it be shown that under his commission the defendant did some act in aid of the Insurrection or Rebellion, the fact that he was justice of the peace is of no consequence in the determination of his guilt or innocence under this indictment.

Take the case, and remember that every reasonable doubt is to be given in favor of defendant, and by reasonable doubt we do not mean every indefinite uncertainty of mind which you may feel, but such a doubt as you can give a reason for or such a doubt as a reasoning man would entertain after careful consideration of the proof.